CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 1 2 2019

JULIA C. DUDLEY, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **MICHAEL DERRICK EDWARDS,** | ) | CASE NO. 7:18CV00423 |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| **A. DEBORD,** | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| **Defendant.** | ) | |

Michael Derrick Edwards, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983,[1] alleging that defendant A. DeBord violated his First Amendment rights by retaliating against him for filing grievances. DeBord filed a motion for summary judgment, and Edwards has responded, making this matter ripe for disposition. After review of the record, the court concludes that the defendant's motion for summary judgment must be denied.

I. BACKGROUND.

The record indicates that Edwards, at all times pertinent, was confined at River North Correctional Center ("River North") and DeBord was the Assistant Food Service Director at River North. Edwards worked in the kitchen at River North, under the supervision of DeBord. Edwards was fired from his job on July 12, 2018.

According to Edwards, on July 12, 2018, he submitted three emergency grievances complaining that he had been forced to wear a jumpsuit due to a prior incident. After the third emergency grievance, Edwards went to the supervisor's office to talk with DeBord. DeBord allegedly told Edwards that "if [he] had time to file grievances, [he] must not be working." Resp. D. Mot. Summ. J. 2, ECF No. 19-1. Following this conversation, a correctional officer in the

---

[1] The court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. See United States v. Marshall, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

kitchen told Edwards that he would not be returning to the kitchen, and another correctional officer told him that he "was going to be fired over a jumpsuit." Id. Edwards then wrote a fourth emergency grievance. The unit manager told Edwards that he "didn't have to worry about working in the kitchen anymore over the grievances and shredded the [fourth] grievance." Id. Later that day, the unit manager and institutional ombudsman told Edwards that he had lost his job in the kitchen.

DeBord's evidence recounts a different version of events. When Edwards arrived for work on July 11, 2018 "to change into his kitchen clothes, he was wearing a prison jumpsuit. On this day, Edwards had an attitude about an issue that had occurred in his housing unit. Due to his poor attitude and behavior, he was removed from the kitchen at 3 p.m. to return to his housing unit." DeBord Aff. ¶ 6, ECF No. 14-1. On July 12, 2018, when Edwards returned to work, he "continued to demonstrate a poor attitude and behavior that day and was removed from the kitchen at 8:30 a.m. to return to his housing unit." Id. DeBord arrived to work at 8:00 a.m. on July 12, 2018, thirty minutes before Edwards was removed from the kitchen. As of 8:30 a.m., DeBord was not aware that Edwards had filed or was writing any emergency grievances. DeBord also "did not tell Edwards that if he has time to file grievances than he must not have been working." Id. at ¶ 7.

DeBord did not have the authority to fire Edwards from his kitchen job. On July 12, 2018, she completed an Offender Work Program Job Suspension and Termination form, whereby she recommended that Edwards be terminated from his kitchen job due to poor job performance. DeBord submitted the form to L. Morgan-Bowman, Senior Counselor at River North, who conducted an administrative review, and approved Edward's termination from his kitchen job. Morgan-Bowman "based [her] termination approval on Ms. DeBord's statement that termination request was due to Edwards' poor job performance." Morgan-Bowman Aff. ¶ 7, ECF No. 14-2.

2

Edwards filed an informal complaint on July 12, 2018, complaining that he was fired in retaliation for filing grievances. DeBord responded, stating that Edwards was released from the kitchen for poor job performance – "due to Mr. Edwards on Thurs 7/12/18 wanting his ID and walking out and then his attitude carrying over to Friday 7/13/18."[2] See V.S. 2, ECF No. 2. Edwards states that he never asked for his ID nor did he have an attitude about work; he claims that he worked throughout the day, "even while on break." Edwards Aff. 1, ECF No. 19-2.

On July 18, 2018, Edwards filed a regular grievance. The responding officer informed him that he had to attach his termination paperwork before the grievance would be accepted. On July 20, 2018, Edwards submitted a second regular grievance. On July 25, 2018, after investigation, the warden responded that Edwards was "terminated from the kitchen due to [his] behavior which led to poor job performance." See V.S. 9. Edwards appealed. On August 13, 2018, the regional ombudsman upheld the decision.

Edwards then filed the present action. Edwards' sole claim is that DeBord fired him in retaliation for his filing of emergency grievances, in violation of his First Amendment rights.[3]

II. DISCUSSION

A. Standards of Review

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that

---

[2] DeBord acknowledges that she made a mistake regarding the dates in her response to the informal complaint. DeBord states that "Mr. Edwards wanted his ID and walked out on Wednesday, 7/11/2018, not Thursday, 7/12/2018. His attitude carried over to Thursday, 7/12/2018, not Friday, 7/13/2018." DeBord Aff. ¶ 11.

[3] Because Edwards is now confined at Wallens Ridge State Prison, he cannot obtain the injunctive relief he seeks—getting his job back. See Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive . . . relief with respect to his incarceration there."). The court will dismiss his claim for injunctive relief as moot.

3

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative." Anderson, 477 U.S. at 249.

The moving party bears the burden of proving that judgment on the pleadings is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. Celotex, 477 U.S. at 322-24; Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Instead, the nonmoving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. Abcor Corp. v. AM Int'l, Inc., 916 F.2d 924, 930 (4th Cir. 1990) (quoting Anderson, 477 U.S. at 249-50).

B. Retaliation

Edwards has no "constitutional entitlement to and/or due process interest in accessing a grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 542 (4th Cir. 2017), cert. denied, 138 S. Ct. 755 (2018). He has a First Amendment right to be free from retaliation,

4

however, for filing the emergency grievances as an exercise of his right to petition for redress. Id. "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable [under § 1983] because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Am. Civil Liberties Union v. Wicomico Cty., 999 F.2d 780, 785 (4th Cir. 1993). On the other hand, the court must treat an inmate's claim of retaliation by prison officials "with skepticism," because prison officials' actions are often taken in direct response to a prisoner's conduct. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). "[T]o state a colorable retaliation claim under Section 1983, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017), cert. denied, 138 S. Ct. 738 (2018).

"A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." Id. at 500. The plaintiff must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right and show that he suffered more than de minimis inconvenience. Am. Civ. Liberties Union, 999 F.2d at 785-86 n.6. Thus, "[i]n order to establish [a] causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [him] engaging in protected activity." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 501 (4th Cir. 2005).

Edwards asserts that DeBord told him he was being fired because he filed emergency grievances. Filing a grievance is a protected First Amendment activity, and, although an inmate has no constitutional right to a prison job, in this case, being fired from employment for such activity qualifies as an adverse action to support a retaliation claim. Booker, 855 F.3d at 543-45

("[Plaintiff's] right to file a prison grievance free from retaliation was clearly established under the First Amendment"); see e.g., Bradley v. Conarty, No. 17-2340, 2018 U.S. App. LEXIS 26078, 2018 WL 5883929, at *2 (6th Cir. Sept. 13, 2018) ("[T]he loss of a prison job can in some circumstances be deemed an adverse action for purposes of a retaliation claim."); Vignolo v. Miller, 120 F.3d 1075, 1078 (9th Cir. 1997) (holding discharge from prison job in retaliation for exercise of constitutional right constitutes adverse action despite absence of constitutional right to prison job); Baker v. Zlochowon, 741 F. Supp. 436, 439 (S.D.N.Y. 1990) ("[A] claim for relief can be stated under section 1983 for job for reassignments or terminations which were in retaliation for an inmate's efforts to seek vindication of his legal rights. . ."). Taking the evidence in the light most favorable to Edwards, the court concludes that a reasonable fact finder could rule in his favor on the retaliation claim. DeBord states, and may well prove at trial, that Edwards was fired for poor job performance. Because the court finds genuine issues of material fact in dispute, however, the court will deny DeBord's motion for summary judgment.[4]

### III. CONCLUSION

For the reasons stated herein, the defendant's motion for summary judgment must be denied. An appropriate order will issue this day.

The clerk will send copies of this memorandum opinion and the accompanying order to the plaintiff and to counsel of record for the defendant.

**ENTER:** This 12th day of August, 2019.

_____
Senior United States District Judge

---

[4] The material disputes that preclude summary judgment on the merits are also fatal to the defendant's argument for summary judgment on the ground of qualified immunity. See Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995) (holding that when resolution of qualified immunity question and case itself both depend upon a determination of what actually happened, summary judgment on grounds of qualified immunity is not proper).