IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **MICHAEL DERRICK EDWARDS,** )<br>    Plaintiff,                                )<br>                                                  )<br> v.                                              )<br>                                                  )<br> **A. DEBORD,**                         )<br>    Defendant.                            )<br>                                                  )<br>                                                  ) | **AMENDED REPORT AND**<br>**RECOMMENDATION**<br>Case No.: 7:18cv00423<br><br>By:  Pamela Meade Sargent<br>        United States Magistrate Judge |

This matter is before the undersigned on referral from the presiding judge for reconsideration in light of the Court of Appeals for the Fourth Circuit's ruling in *Martin v. Duffy*, 977 F.3d 294 (4th Cir. 2020). The matter is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following amended report and recommended disposition.

### I. Facts

The pro se plaintiff, Michael Derrick Edwards, ("Edwards"), a Virginia Department of Corrections, ("VDOC"), inmate proceeding pro se, seeks damages under 42 U.S.C. § 1983 alleging that defendant, A. DeBord, violated his First Amendment rights by retaliating against him for filing administrative remedy requests. This case was tried to the court on February 19, 2020. By Report and Recommendation entered on May 11, 2020, the undersigned recommended that the court enter judgment in DeBord's favor because Edwards had failed to prove that DeBord had fired him from his prison kitchen position in retaliation for exercising his First Amendment rights. Edwards filed timely objections to the Report and

Recommendation. By Order entered February 5, 2021, the presiding judge recommitted the matter to the undersigned for reconsideration in light of the Fourth Circuit's October 13, 2020, ruling in *Martin*.

At trial, Edwards testified that he was fired from his job in the kitchen at River North Correctional Center, ("River North"), by DeBord on July 12, 2018, after he filed three emergency grievances. Edwards said that, when he reported to work in the kitchen at River North on July 11, 2018, he was experiencing an issue with the laundry. He said that Officer Wilson allowed him to leave his kitchen work and return to his pod to handle the issue around noon that day. Edward said that he never spoke to DeBord or Officer Lawson that day.

Edwards said that, when he returned to his kitchen job the next morning, July 12, 2018, he started writing emergency grievances because his laundry issue had not been resolved. Edwards said, after he reported for work in the kitchen, he completed and submitted three separate emergency grievance forms, which were admitted into evidence as Plaintiff's Exhibit Nos. 1-3. (Docket Item Nos. 70-1, 70-2, 70-3.) Edwards admitted that, when he filed these emergency grievances, he knew that his laundry issue did not qualify to be addressed by an emergency grievance. Nonetheless, Edwards said, he submitted the emergency grievances on the advice of his inmate kitchen co-workers in an effort to inform the watch commander of his laundry dispute. He said that the correctional lieutenants were saying that they were not aware of his issue. He said that emergency grievances automatically went to the watch commander for review.

Edwards said that he wrote these grievance forms during "leisure time," after breakfast had been prepared. Edwards said that his kitchen job started at 3 a.m. and

that breakfast was served at 6 a.m. He said that after breakfast had been prepared, he usually had from 4:30 to 6 a.m. as "basically like leisure time." At one point, Edwards testified that "during [this] time … we just sit in the chow hall until the pods come to the chow hall to eat." At another point, Edwards said that, during this time, he was supposed to make sure that his food line was clean, and all the food was prepped and ready to serve. Edwards admitted that he was paid for this leisure time and that he had tasks, such as rolling utensils in napkins and cleaning his work area, that he was supposed to perform during this time. He said, however, if he finished those tasks and had no work, he was allowed to eat, use the bathroom or do whatever he wanted to do until time to serve breakfast.

Edwards testified that, after he returned to work in the kitchen on July 12, 2018, he spoke with his inmate co-workers, and they encouraged him to "write it up." Edwards said that, after breakfast was served, he took a break from his kitchen duties on three separate occasions to sit down at a table in the dining hall to write out the three emergency grievances. Edwards testified that, later that day, DeBord called him to her office and told him that, if he had time to file grievances he must not have been working. He said that Lawson handed him his prison identification card and sent him back to his housing unit.

Edwards said that his kitchen job required him to work five days a week for 15 hours a day from 3 a.m. to 6 p.m. Edwards admitted into evidence two Offender Work Roster forms as Plaintiff's Exhibit No. 5. (Docket Item No. 70-5.) The Offender Work Roster forms showed that for the week ending July 1, 2018, Edwards worked 90 hours. These forms also showed that Edwards worked only 17 hours for the week ending July 15, 2018, because he was "terminated." Edwards also admitted into evidence, as Plaintiff's Exhibit No. 6, Offender Pay Statement forms showing

his hours worked and wages earned as a Line Service Worker for the weeks ending June 10 through July 15, 2018. (Docket Item No. 70-6.) These forms also show that Edwards was terminated during the week ending July 15, 2018.

Edwards also admitted a copy of the Kitchen Rules and Regulations for the River North Correctional Center Kitchen that he signed when hired to work in the kitchen in April 2018, as Plaintiff's Exhibit No. 4. (Docket Item No. 70-4.) These Kitchen Rules and Regulations stated, in part, "You may only work in your designated area unless authorized or asked otherwise." These Rules also stated:

> By signing below I acknowledge that I have gone over these rules and regulations. I agree to abide by any rule or regulation presented here and any future rule or regulation made. I understand that failure to abide by these rules will result in termination from the kitchen or appropriate disciplinary action. I agree to do the work assigned to me in any area.

(Plaintiff's Exhibit No. 4.)

On cross-examination, Edwards testified that he had filed a number of administrative remedy requests after being fired from his River North kitchen job. Edwards also testified that he had filed two other lawsuits based on claims of retaliation against him by VDOC employees. One of these lawsuits was against P. Scarberry, the Manager of Food Services at Red Onion State Prison, ("Red Onion"). Edwards's Complaint in this suit was admitted as Defendant's Exhibit No. 2. (Docket Item No. 70-11.) Edwards said that he filed this lawsuit against Scarberry on July 23, 2018, while housed at River North. Edwards, who at the time of trial was housed at Red Onion, testified that, after being fired from his kitchen job, he was

convicted of a disciplinary charge for possession of intoxicants while housed at River North.

Edwards also admitted into evidence, as Plaintiff's Exhibit No. 7, (Docket Item No. 70-7), an Informal Complaint he filed on July 12, 2018, complaining that he was fired by DeBord in retaliation for filing grievances and, as Plaintiff's Exhibit Nos. 8 and 9, Affidavits from DeBord. (Docket Item Nos. 70-8, 70-9.)

River North inmate Rasean B. Rogers testified that he worked with Edwards in the River North kitchen on July 11 and 12, 2018. Rogers stated he and Edwards worked together in the kitchen for a few months before Edwards was fired. He said that Edwards came to work in the kitchen, did his job and stayed to himself. Rogers said that he was aware that Edwards was fired from his kitchen job after he filed grievances. Rogers testified that he and other inmate kitchen workers had advised Edwards to file emergency grievances regarding his laundry issue. "I told [Edwards] to write it up," he said. Rogers said that Edwards had been placed in a prison "jumpsuit" instead pants and a shirt because a correctional officer, not DeBord, had written him up for not pulling his pants up. Rogers said Edwards's emergency grievances were complaining that the prison was continuing to provide Edwards with jumpsuits instead of pants and shirts. Rogers testified that he did not see Edwards do "anything out of the ordinary" on the day he was fired from his kitchen job. He said that he had never witnessed Edwards curse anyone or have an attitude with anyone. Rogers conceded that he saw and spoke to Edwards as he was sitting at a dining hall table writing his grievances on July 12, 2018. He said that he did not witness any staff tell Edwards to stop doing what he was doing and get back to work.

Inmate Barry Maurice Thompson testified that he was present working in the River North kitchen on the day Edwards was fired. Thompson said that Edwards was the "best worker [on his line]" and the "hardest worker on that line." Thompson said that he did not observe Edwards argue with anyone or be angry or upset on the day he was fired. He said that he knew that Edwards had an issue about his clothing and had written out a complaint form about it. Thompson testified that he worked in the kitchen pots and pans area. He stated that Edwards often would come to the pots and pans area to talk with him while rolling utensils. Thompson said he remembered DeBord telling Edwards that he could not roll utensils in the pots and pans area on the day Edwards was fired.

Inmate Ernest L. Elliott also testified that he was present in the River North kitchen on the day Edwards was fired. Elliott said that he never saw Edwards involved in any altercation at work, nor did he witness anyone having to tell Edwards to do his job. Elliott said that he did not witness Edwards writing any grievances at work.

Zachary Lawson, a kitchen correctional officer at River North, testified that his duties included maintaining security in the kitchen, helping with a daily inventory of kitchen tools and helping with food service. Lawson testified that, on July 11, 2018, Edwards was called to the laundry, and, when he returned to work in the kitchen, he was very agitated and angry over what had occurred with the prison laundry. He said that Edwards was "agitated and ill," pacing and talking with inmate co-workers. Lawson said that, later that day, he and DeBord talked with Edwards and allowed him to leave work and return to his housing unit to address the laundry issue. They told Edwards "to come in with a better attitude and we would have a good day the following day," Lawson testified.

Lawson said, when he came to work the next morning at 8 a.m., another officer reported that Edwards was not working as he should and, instead, was very agitated and angry and pacing back and forth. He said that he personally observed Edwards not being on the line where he was supposed to work. He said that Edwards was "walking around, angry" talking with other offenders, and he became belligerent with other officers and food service workers. Lawson said that he told Edwards to get back to work on the line, and Edwards did not. Lawson testified that Edwards was agitated, ill or mad, pacing back and forth and talking with the other inmates who worked in the kitchen.

Lawson said that he told DeBord about Edwards. Lawson said that DeBord called Edwards to the kitchen office and told him that he needed to get back to work. Lawson testified that he did not tell DeBord that Edwards had filed any grievances that day. Lawson testified that he had not experienced any problem with Edwards before July 11, 2018.

Lawson said that, when Edwards did not return to work as instructed on July 12, 2018, he was fired for poor job performance. He said that he did not recall Edwards causing any problems when he was removed from the kitchen on July 12, 2018. Lawson testified that he could have written Edwards a disciplinary charge for failing to work as instructed, but he did not.

Latasha Bowman testified that she had worked as a counselor senior at River North since June 2018. Bowman said that, in July 2018, Edwards worked as a line server in the River North kitchen. Bowman said that the process to terminate an inmate from a prison job starts with the inmate's supervisor. She said an inmate's supervisor would give her a suspension and termination form, which she would sign

and forward to payroll to terminate the inmate. She said that the inmate also would receive a copy of this form.

Bowman said that Defendant's Exhibit No. 1 was the Offender Work Program Job Suspension and Termination form for Edwards. On this form, DeBord wrote that Edwards was being terminated from his kitchen job "[d]ue to poor job performance." (Docket Item No. 70-10.) Bowman said that she signed this form officially terminating Edwards from his kitchen job. She said, in doing so, she was performing a clerical duty. She said that she did not make any determination of the accuracy of the reason cited for Edwards's firing. Bowman also testified that she was not aware that Edwards had filed any grievances before she received and signed this form.

Defendant DeBord testified that, in July 2018, she worked as the Assistant Food Director at River North, a position she had held for seven years. She said that, as Assistant Food Director, her job duties included ensuring that food was prepared correctly in compliance with all regulations and in a timely manner. DeBord said that Plaintiff's Exhibit No. 4 was a copy of the Kitchen Rules and Regulations that all offenders were required to sign before starting work in the River North kitchen. DeBord said that these Rules included requiring that an offender work only in his authorized area and that an offender could not leave his authorized work area without the approval of his supervisor. DeBord said that these Rules also included requiring a kitchen worker to perform any tasks asked of him by a supervisor or officer. The Rules further notified the offenders that any violation of the Rules could result in termination or disciplinary charges, she said. DeBord further testified that any single violation of the Kitchen Rules could result in an offender's termination from his kitchen job.

DeBord said, in July 2018, Edwards worked as a line server in the kitchen and, as a line server, he was authorized only to be in the area for line service. She specifically testified that Edwards was not authorized to perform any of his job in the pots and pan area where offender Thompson worked. She further testified that rolling utensils in the pots and pans areas raised a health issue because the pots and pans area contained dirty dishes.

DeBord testified that, on July 11, 2018, Officer Wilson asked her if Edwards could leave work and return to his housing unit. She said that she approved Edwards leaving work early that day. DeBord said, when she came to work the next day, July 12, 2018, she "came into a little bit of chaos." She said that Lawson informed her that he had instructed Edwards to return to work, and Edwards had not. She said that she then spoke to Edwards, telling him that she was sorry he had issues, but she needed him to go back to work. She said that Lawson later told her that Edwards, again, was not working as instructed. DeBord said that she, then, ordered Edwards removed from the kitchen. She said that she did not tell Edwards he was being fired at that point. Instead, DeBord said, she usually had an offender removed from the kitchen so that the offender would not cause any problems, and, she later completed the necessary paperwork to terminate the offender. DeBord specifically denied telling Edwards that, if he had time to write grievances, he was not doing his job.

DeBord testified, at one point, that she did not know that Edwards had filed any emergency grievances on July 12, 2018, when she fired him. She later testified that she did not know that he had filed these grievances when she had him removed from the kitchen on July 12, 2018, but she said she did know that he had filed the grievances before she completed the paperwork to terminate Edwards from his kitchen job. DeBord also said that she did not respond to any of the three emergency

-9-

grievances Edwards filed on July 12, 2018. She said that she fired Edwards because he did not comply with orders to return to work.

DeBord said that, typically, Edwards worked 15 hours a day four days a week for a total of 60 hours. She said that Edwards worked Monday through Thursday. She said, on occasion, Edwards worked overtime or additional hours in a week. DeBord also testified that Edwards's testimony about having "leisure time" was not accurate. She said that Edwards should have been using the time between meals to clean.

DeBord testified that Defendant's Exhibit No. 4 was an Implementation Memorandum regarding Offender Work Programs at River North. DeBord testified that, pursuant to this Memorandum, if an offender were convicted of certain disciplinary charges, including violations of Offense Code 241, the offender would be terminated from any prison job he held. She said that any inmate terminated for a disciplinary charge would have to remain charge free for 90 days to be rehired. DeBord testified that Defendant's Exhibit No. 3 was a Disciplinary Offense Report showing that Edwards was convicted of a 241A disciplinary offense code violation for possession of intoxicants on October 16, 2018.

DeBord said that the kitchen at River North prepared three meals a day every day to the offenders housed there, including preparing 300 box meals for feeding in the pod at every meal. She said that it did not benefit her to terminate any kitchen worker. DeBord conceded that, despite the statements made in her Affidavits admitted as Plaintiff's Exhibit No. 8 and 9, she had approved Edwards leaving work early and returning to his housing unit on July 11, 2018. DeBord also conceded that, despite statements contained in her Affidavit admitted into evidence as Plaintiff's

Exhibit No. 8, she did not personally witness Edwards exhibiting a poor attitude or behavior on either July 11 or July 12, 2018. She said that Lawson had told her that Edwards had a poor attitude and was not working on July 12, 2018. DeBord testified that she and Edwards never argued, and Edwards never cursed her. She said that she had not experienced any problems with Edwards before July 11, 2018.

*II. Analysis*

The plaintiff asserting a § 1983 claim has the burden of proof. *See Oliver v. Powell*, 250 F. Supp. 2d 593, 598 (E.D. Va. 2002). In order to prevail on his claim for First Amendment retaliation under § 1983, Edwards must have proven that (1) he engaged in protected First Amendment activity; (2) DeBord took some action that adversely affected his First Amendment rights; and (3) there was a causal relationship between Edwards's protected activity and DeBord's conduct. *See Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017). Furthermore, the Fourth Circuit has held that the First Amendment right "to petition the Government for a redress of grievances," U.S. CONST., amend. I, protects a prisoner's right to seek administrative remedies. *Martin*, 858 F.3d at 249; *see also Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 540 (4th Cir. 2017) ("if an inmate exercises his First Amendment right when he files a prison grievance, retaliation against him for doing so is unconstitutional.")

In 2020, the Fourth Circuit held that the burden-shifting framework set out in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), should apply to evaluate the causation element of a prisoner's retaliation claim under the First Amendment. *See Martin v. Duffy*, 977 F.3d at 299-304. In *Martin*, the Fourth Circuit held that, after a prisoner plaintiff established a prima facie case of retaliation, including showing that his protected conduct was a substantial or motivating factor

in a defendant's adverse action, a defendant may defeat the claim by proving by a preponderance of the evidence, that the same action would have been taken in the absence of the prisoner's protected conduct. *See Martin*, 977 F.3d at 301. The court further held that, in a "unitary event case" -- a case where the plaintiff's protected conduct is a single event "that could prompt either a permissible or an impermissible reason on the part of the defendant to act," *Greenwich Citizens Comm., Inc. v. Cntys. of Warren & Washington Indus. Dev. Co.*, 77 F.3d 26, 33 (2d Cir. 1996), the same decision test is met if the defendant would have reached the same decision absent a retaliatory motive. *See Martin*, 977 F.3d at 303-04.

The evidence presented by Edwards, if found credible, would be sufficient to establish a prima facie case of retaliation under *Martin*. Edwards presented evidence that he had engaged in activity protected by the First Amendment, in that he testified that, on the morning he was terminated from his kitchen job, he filed three emergency grievances regarding his laundry issue. Evidence of his termination establishes an adverse action taken by DeBord. Edwards also testified that, at the time of his termination, DeBord told him that, if he had time to file grievances, he must not have been working. If this testimony by Edwards were found credible, it would be sufficient to provide a causal link between Edwards's protected activity and the adverse action. I do not, however, find Edwards's testimony on this issue credible. Regardless, I further find that the preponderance of the evidence shows that DeBord terminated Edwards that day irrespective of his protected activity.

DeBord specifically denied telling Edwards if he had time to file grievances, he must not have been working. In fact, DeBord testified that she did not speak to Edwards after she ordered him removed from the kitchen. She further testified that, when she spoke with Edwards on July 12, 2018, she told him only that she was sorry

-12-

he had issues, but she needed him to get back to work. DeBord further testified she fired Edwards because she was informed that he did not return to work as instructed. DeBord's testimony is supported by Lawson, who also testified that DeBord told Edwards only that he needed to get back to work. Lawson also testified that he personally observed Edwards out of his work area, talking with other kitchen workers and not working as instructed on July 12, 2018, and that he told DeBord that Edwards had not returned to work as instructed.

Furthermore, Edwards's own testimony supports Lawson's statement that Edwards was not working as he should have been on July 12, 2018. Edwards, himself, testified that he left his work area on the serving line on three separate occasions on July 12, 2018, to sit down at a table in the dining hall to complete three separate emergency grievances. Edwards said he filed these emergency grievances after speaking with his co-workers about his laundry problem that morning. Edwards's witness, Rogers, also confirmed that Edwards had left his work area on the morning of July 12, 2018, to complete these grievances. Further, Edwards's witness, Thompson, testified that Edwards often left his work area to roll utensils in the pots and pans area and that DeBord told Edwards, on the day he was fired, that he could not roll utensils in the pots and pans area.

Even under the burden-shifting framework set out in *Martin*, Edwards has the burden to show that that his protected conduct was a substantial or motivating factor in DeBord's adverse action. The only evidence Edwards presented regarding causation was his testimony that DeBord told him when she fired him that, if he had time to file grievances, he must not have been working, evidence which I have found not credible. Based on my rejection of this evidence, I find that Edwards has failed

-13-

to make a prima facie case of retaliation which would shift the burden to DeBord to refute.

Even assuming that Edwards had established a prima facie case of retaliation, I would find that the preponderance of the evidence showed that DeBord terminated Edwards for a permissible reason – that he had not returned to work as instructed.

Based on the above stated reasons, I recommend that the court enter judgment in DeBord's favor.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Edwards has failed to prove that DeBord fired him in retaliation for filing grievances; and
2. Edwards has failed to prove that DeBord violated his First Amendment rights.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court enter judgment in favor of the defendant.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

 Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Elizabeth K. Dillon, United States District Judge.

The Clerk is directed to send copies of this Amended Report and Recommendation to all counsel of record and unrepresented parties.

DATED: this 30th day of September 2021.

        /s/ *Pamela Meade Sargent*
        UNITED STATES MAGISTRATE JUDGE