IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL DERRICK EDWARDS,<br>    Plaintiff,<br><br>v.<br><br>A. DEBORD,<br>    Defendant. | )<br>)<br>)  Civil Action No. 7:18-cv-00423<br>)<br>)  By:  Elizabeth K. Dillon<br>)       United States District Judge<br>)<br>) |

**MEMORANDUM OPINION**

Michael Derrick Edwards, a Virginia inmate proceeding *pro se*, filed this case pursuant to 42 U.S.C. § 1983. The case is before the court on the Amended Report and Recommendation (R&R) of U.S. Magistrate Judge Pamela M. Sargent (Dkt. No. 91),[1] to which Edwards has objected (Dkt. No. 92). Edwards separately objected to the magistrate judge's order denying his motion for sanctions based on spoliation (Dkt. No. 83 (objections); Dkt. No. 76 (order); Dkt. No. 41(motion)), which the court also addresses herein. Also pending before the court is Edwards's "motion for judicial notice" (Dkt. No. 88), which relates to his spoliation motion.

As discussed herein, the court has carefully reviewed the spoliation ruling for clear error and reviewed *de novo* Edwards's objections to the Amended R&R. Based on its review of the entire record, including the trial transcript, the court concludes that the magistrate judge did not clearly err in her spoliation ruling and that the magistrate judge's factual findings are adequately supported by the evidence presented at trial. For these reasons, discussed in more detail below, the court will overrule Edwards's objections to both, uphold the spoliation order, adopt the Amended R&R, and enter final judgment in favor of defendant.

---

[1] After the case was initially referred to Judge Sargent, she held the trial on February 19, 2020, and issued a Report and Recommendation on May 11, 2020. The then-presiding district judge Glen E. Conrad then re-referred the matter to Judge Sargent on February 5, 2021, to address the Fourth Circuit's decision in *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020). The case subsequently was transferred to the undersigned. (Dkt. No. 87.) Judge Sargent issued her amended R&R on September 30, 2021. (Dkt. No. 91.)

I. FACTUAL BACKGROUND

**A. General Overview**

The Amended R&R provides a detailed account of the testimony and documentary evidence, and the court will not repeat it fully here. In short, Edwards claims that defendant DeBord, the Assistant Food Services Director at River North Correctional Center ("River North"), terminated him from his prison kitchen job in retaliation for his filing "emergency grievances" about a problem he was having related to the laundry department.

For her part, DeBord asserts that she terminated Edwards because she had been advised by an officer working in the kitchen, Lawson, that Edwards was agitated and upset and was not performing his duties as directed on July 12, 2018. After she and Lawson met with Edwards in her office and she instructed him to get to work, Lawson reported that Edwards still was not following that instruction. DeBord made the recommendation to terminate his employment at that time, and she had him removed from the kitchen, although she did not personally talk with him or remove him. According to her testimony, at the time she made the decision and had Edwards removed, she did not know that Edwards had filed any grievances. By the time she completed the termination paperwork later that day, however, she had been informed that he had filed emergency grievances about the laundry.

Edwards testified that he was not agitated and was performing his duties satisfactorily on July 12. Although he admitted that he spent time at work completing the three grievances, he stated that he did so on his "leisure time," after breakfast had been prepared. He further testified that, at the time of his termination, DeBord told him that, if he had time to file grievances, he must not have been working.

In her Amended R&R, the magistrate judge specifically concluded first that she did not

find Edwards's testimony concerning DeBord's alleged statement to be credible. But regardless, she found that the evidence showed DeBord "terminated Edwards that day irrespective of his protected activity." Specifically, "the evidence showed that DeBord terminated Edwards for a permissible reason—that he had not returned to work as instructed." (R&R 14.) The magistrate judge thus recommended that the court find that: 1) Edwards failed to prove that DeBord fired him in retaliation for filing grievances; and 2) Edwards failed to prove that DeBord violated his First Amendment rights. She further recommended that the court enter judgment in favor of DeBord.

**B. Spoliation Ruling**

As noted, Edwards also objects to the magistrate judge's ruling on his spoliation motion. The background of the spoliation motion is set forth in the magistrate judge's ruling on it. (Dkt. No. 76), and the court incorporates that background by reference. To summarize, Edwards contends that defendant should have preserved video evidence showing the kitchen on the date he was terminated. He asserts that the video would have shown that he was working and following directions during his entire shift; and, thus that the reason given for his termination—that he was not performing his duties as directed—was false. (*See generally id.*)

In her order denying the motion, the magistrate judge believed that Edwards had not requested the video from DeBord in time for it to be preserved. Specifically, the footage he sought was from July 12, 2018, and the video footage was recorded over automatically about 120 days later. Edwards filed with the court a discovery request seeking "any and all video footage pertaining to the incident on 7-12-18 between the times of 3:00 am – 9:00 am on," but that motion was never sent to DeBord or counsel and was filed before the return of the waiver of service form several weeks later. Edwards did not serve DeBord or his counsel with any request

for such discovery until almost a full year later, in August 2019, which would have been after the video would have been automatically overwritten.

The magistrate judge gave several reasons for denying the motion for spoliation sanctions. First, she concluded that "DeBord had no knowledge that the video evidence should have been preserved in time to take any action to preserve it." (*Id.* at 6.) In explaining that conclusion, she also stated that there was no reason for DeBord "or anyone at River North" to be aware of a need to preserve the recordings prior to Edwards's discovery requests and she stated that "Edwards has produced no evidence that he filed any request through the prison's grievance process to preserve any video evidence, and King's Affidavit provides evidence that Edwards did not file any such request." (*Id.* at 6–7.)

Second, she concluded that the "evidence before the court does not clearly establish that Edwards has been prejudiced by the failure to preserve the requested video recordings." (*Id.* at 7.) And third, she found that there was no evidence "to show that DeBord took any action, or failed to take any action, which resulted in the loss of the requested video with an intent to deprive Edwards of the use of this evidence." (*Id.*)

In addition to objecting to that order, Edwards also filed a motion in which he requests that this court take judicial notice of certain materials in ruling on his objections. Specifically, he asks that the court take judicial notice of Virginia Department of Corrections ("VDOC") Operating Procedure 866.1, which is VDOC's grievance procedure, as well as his grievances related to his retaliation claim. He suggests that, taken together, these documents show that he, in fact, requested the camera footage during the grievance process. For support, he points to his response to the warden's Level I grievance, which was attached as an exhibit to one of

4

defendant's summary judgment affidavits (Dkt. No. 14-1, at 13–14.)[2] That document contains a lengthy hand-written paragraph that was his appeal from the warden's Level I grievance response. In it, he includes two references to camera footage. In one place, he writes, "How can my grievance be unfounded when an investigation into it brings about details that are different from the details given by the person who the grievance is about. The rapid eye camera proves that the details given by DeBord and the warden's investigation are fabricated." Later, he states, "The warden's investigation is completely bias[ed] and prejudice[d] due to the fact he only relied on the words of those who are mentioned in my complaint and grievance who played a part in the retaliation against me in the form of my job termination when there is clearly documentation and camera footage to prove my case." (*Id.*) The motion for judicial notice (Dkt. No. 88) will be addressed in the context of discussing Edwards's objections to the spoliation ruling.

## II. DISCUSSION

### A. Standard of Review

With regard to the Amended R&R, this court must review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). An objection is properly noted, however, only if it is stated "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). *See also Page v. Lee*, 337 F.3d 411, 416 n.3 (4th Cir. 2003). Objections must direct the court to a specific error in the report and recommendation. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). General or conclusory objections, therefore, are not proper; they are in fact considered the equivalent of a waiver. *Id.*

---

[2] The affidavit itself was entered as an exhibit at the February 19, 2020 trial (Pl.'s Ex. 8, Dkt. No. 70-8), but the exhibits attached to the original were not included.

Upon review, the court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1)(C). In evaluating a magistrate judge's findings after an evidentiary hearing, the court may give a magistrate judge's report and recommendation "such weight as [their] merit commands and the sound discretion of the judge warrants," *United States v. Raddatz*, 447 U.S. 667, 682–83 (1980) (internal quotations omitted), but the court must exercise its non-delegable authority "by considering the actual testimony, and not merely by reviewing the magistrate's report and recommendations." *Wimmer v. Cook*, 774 F.2d 68, 76 (4th Cir. 1985) (citations omitted).

With regard to the spoliation ruling, the court concludes that it is a non-dispositive order. As other courts have reasoned, "[w]hen a party brings any motion for sanctions, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether the matter is nondispositive or dispositive, and whether Rule 72(a) or 72(b) applies." *Alpha Omega Servs. v. Dyncorp Int'l, LLC*, No. 1:13cv00809, 2014 WL 1401800, at *6 (E.D. Va. Apr. 9, 2014); *Segal v. L.C. Hohne Contrs., Inc.*, 303 F. Supp. 2d 791, 794 (S.D. W. Va. 2004) (reasoning that "a motion for 'default judgment' based on alleged discovery violations is nothing more than an optimistically labeled motion for sanctions"; thus, only "in the rare situation where default judgment is actually imposed as a sanction [does] the motion for sanctions become dispositive"). As a non-dispositive ruling, the standard of review is not *de novo*; instead, the court may set aside the magistrate judge's only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); *FEC v. Christian Coalition*, 178 F.R.D. 456, 460 (E.D. Va. 1998) (explaining that *denial* of a Rule 37 discovery motion is nondispositive and should be reviewed under the "clearly erroneous or contrary to law"

standard).

**B. First Amendment Retaliation**

To succeed on his First Amendment retaliation claim, Edwards must establish that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (citing *Martin v. Duffy*, 858 F.3d 239, 249) (4th Cir. 2017)) (alterations omitted).

As the magistrate judge did, the court concludes that there was sufficient evidence of the first two elements. As to the first element, prisoners have a "First Amendment right to be free from retaliation for filing a grievance," *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). With regard to the second element of this claim, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). At trial, DeBord emphasized that Edwards was not, in fact, deterred from filing grievances and lawsuits. Under the proper objective standard, though, the termination of a prison job could deter a prisoner of ordinary firmness from continuing to exercise his First Amendment rights. *Patel v. Moron*, 897 F. Supp. 2d 389, 400 (E.D.N.C. 2012) (concluding that termination of a prisoner's job was a sufficient adverse action to support a First Amendment retaliation claim). The court's prior opinion in this case so recognized, as well. (Dkt. No. 22, available as *Edwards v. DeBord*, No. 7:18CV00423, 2019 WL 3781446, at *3 (W.D. Va. Aug. 12, 2019).)

As to the third element, the Fourth Circuit has instructed district courts addressing retaliation claims in the prison context to apply the "same-decision test" of *Mt. Healthy City*

*School District Board of Education v. Doyle*, 429 U.S. 274 (1977), in determining the causation element. *Martin*, 977 F.3d at 299. Under that test, once the prisoner-plaintiff shows that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action," then the burden shifts to the defendant to prove a permissible basis for taking that action. *Id.* at 300. "'If the defendant fails to carry that burden, the inference is that 'but for' causation . . . has been shown: the plaintiff would not have been harmed had his rights not been violated by the defendant.'" *Id.* at 299 (quoting *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011)).

## C. Objections to Spoliation Ruling

In his objections to the spoliation ruling, Edwards notes that he presented argument to the court about having requested preservation of the videos in his administrative grievances. (Tr. 156–161.) And as noted in the background section, Edwards's motion for judicial notice requests that the court take "judicial notice" of OP 866.1 and grievances he submitted to exhaust his claims in this suit. Taken in conjunction, he offers these for the proposition that his references in his grievance appeal to the "rapid eye camera" and "camera footage" were sufficient to trigger VDOC's obligation to preserve the video, pursuant to the terms of OP 866.1.

The motion for judicial notice will be granted in part and denied in part. First of all, although Edwards says these documents have previously been submitted to the court, he does not point to where in the record the documents are located. Through review of a significant number of filings in the case and their attached exhibits, the court has been able to locate the grievance, but OP 866.1 does not appear to be part of the record. And although OP 866.1 is available on VDOC's website, that document has been amended at different times, and the court does not want to refer to the incorrect version of the document. Thus, the court will grant in part the

motion for judicial notice and will consider his grievance in addressing his objections to the spoliation ruling, but it will deny the motion in part insofar as he asks the court to take judicial notice of OP 866.1.

Even if the court credited Edwards's assertion of what OP 866.1 requires for video evidence to be preserved, the court nonetheless concludes that the magistrate judge did not clearly err in denying Edwards's motion for sanctions. According to Edwards, OP 866.1 says that "if a grievance is received that references a specific audio or video recording a copy of the recording shall be made and maintained at the facility." (Objs. to Spoliation Ruling 4, Dkt. No. 83.) He alleges that it also says that "copies of grievances, regular and emergency, and audio/video recordings, if applicable, will be maintained at the unit for a minimum of 3 years following final disposition of the grievance." (*Id.*)

Taken in context, it is at least arguable that Edwards's grievance appeal referenced a video recording, although whether it referenced a "specific" recording is less clear. Put differently, although not a direct request to preserve the video, his statements in his grievance appeal arguably could have been treated by VDOC as a request for video from the kitchen on July 12, 2018, to be preserved. If so, then then the magistrate judge's ruling on spoliation would be factually incorrect to the extent that it says that: "Edwards has produced no evidence that he filed any request through the prison's grievance process to preserve any video evidence . . . ." (Order 7–8, Dkt. No. 76). Instead, it appears that there was at least a reference in his grievance to the video recording, although not a direct "request" that it be preserved.

Despite this factual error, the court nonetheless agrees with the magistrate judge's conclusion that DeBord cannot be faulted for any failure to take action to preserve the video at issue. Most importantly, and as noted by the magistrate judge, DeBord's job duties did not

9

include reviewing or preserving video surveillance footage. And there is no evidence that DeBord saw or was made aware of the statements by Edwards referencing the video—which were made as part of his appeal of the warden's response to his grievance. Similarly, although Edwards points to the one discovery request he made within the 120 days when the video likely remained in existence, that discovery request was not served on DeBord or her counsel within that 120-day period.

The court further finds that the magistrate judge did not clearly err in determining that no prejudice has been shown to Edwards from the loss of this video. First, Edwards and his witnesses acknowledged that Edwards was talking to other inmates about being upset about the laundry issue and that he wrote his grievances during his work shift, although he contends he did so while on his "leisure time" or a break. Second, even if the videos showed Edwards dutifully worked for his entire shift, that would not translate into any finding that DeBord, who did not personally observe Edwards but relied on Lawson's report about Edwards, used his failure to work as a pretext for retaliation. Edwards correctly notes in his objections that, if the video reflected that no one ever spoke to him (despite the lack of audio), then he could have used the video to impeach Lawson's testimony that Lawson instructed him to return to his duties. But even if Lawson lied about having so instructed Edwards, that does not provide any evidence that DeBord *knew* that Lawson was lying. For all of these reasons, the court concludes that the magistrate did not clearly err in concluding that sanctions were not warranted. Edwards's objections (Dkt. No. 83) will be overruled.

**D. Objections to the Amended R&R**

Edwards's objections to the Amended R&R are fairly lengthy. He separates them into six objections, some of which contain multiple arguments or subparts. Most are simply general

claims that the magistrate judge must have been biased or clearly erred because she did not credit his evidence instead of defendant's, and he then presents the testimony of his witnesses as being the truth that the magistrate judge should have followed. He contends, for example, that the magistrate judge "twisted, mischaracterized, misconstrued[,] and [took] out of context the actual testimony of plaintiff and his witnesses." (Objs. 2, Dkt. No. 92.) This, and many of plaintiff's objections, are based on his apparent—and incorrect—belief that the magistrate judge was required to treat all of the testimony from him and his witnesses as true. But that is simply not correct. As the most concrete example, he testified that DeBord told him "If you got time to file grievances you must not be working," and he continues to rely on that in his objections. But DeBord denied ever making such a statement, and the magistrate judge expressly found that she was more credible on that point. The court is not required to credit his testimony or to conclude, based on it, that a prima facie case of retaliation was established. In short, the court has carefully considered all of his objections, but concludes that they fail and must be overruled.

Most importantly, the court agrees with the magistrate judge that Edwards has failed to show that his conduct in filing an emergency grievance was a "substantial or motivating" factor in DeBord's decision to fire him. Thus, he failed to establish a prima facie case. But even assuming, for purposes of this decision, that a prima facie case could be established, DeBord credibly testified that she decided to terminate Edwards because he was not performing his job as directed on that date, and she has met her burden to show a permissible reason for her decision. Thus, but-for causation has not been established, and Edwards cannot succeed on his retaliation claim.

The court will address four of his more specific objections in more detail. First, Edwards emphasizes throughout his objections that he was on a break when he wrote out the grievances,

that DeBord testified that she never witnessed him having an attitude or refusing to work, and that Lawson's testimony about whether Edwards was working was "completely contradicted" by Edwards's inmate witnesses. (Objs. 2.) Significantly, DeBord admitted that she relied, as she often did, on Lawson's report to her as to Edwards's actions. As the magistrate judge remarked during the proceedings, this may not have been a wise policy, but it does not mean that DeBord's decision was in any way based on Edwards's protected activity. (Tr. 151-52.)

Second, Edwards contends that "defendant only submitted evidence as to the amount of damages plaintiff should receive" and did not challenge liability. (Objs. 4; *see also id*. at 9 (making same argument).) This is simply untrue. The transcript reflects that defendant presented testimony from DeBord that she did not know about the grievances at the time she made the termination decision, testimony about the permissible reason for the decision, and evidence about the lack of a chilling effect on Edwards. Nowhere does counsel state that defendant is conceding liability or only submitting her case on the issue of damages.

Third, Edwards argues that the R&R is clearly erroneous and contrary to law because it did not account for *Martin v. Duffy*. That is not accurate. The R&R cites to *Martin*, but concludes that no prima facie case was proven. The magistrate judge also concluded that even if one had been, DeBord provided a permissible reason for the termination decision, at least implicitly concluding that DeBord would have made the same decision regardless of Edwards's protected activity. Thus, this objection is without merit.

Lastly, Edwards argues that the magistrate judge abused her discretion by allowing DeBord to admit into evidence a different lawsuit filed by Edwards and a disciplinary offense unrelated to the issues of this suit. The court disagrees and concludes that the magistrate did not err in these evidentiary rulings. The prior lawsuit was offered to show that Edwards speech was

not, in fact, chilled by the alleged retaliatory action.  As noted, while not dispositive as to whether or not an action is sufficiently adverse to support a retaliation claim, the actual effect on plaintiff's speech is a factor that may be considered.  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) ("[T]he plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity.").  Thus, the evidence was relevant and admissible.

Similarly, the disciplinary offense was relevant to the issue of damages.  In particular, counsel argued that even if there were a First Amendment violation, Edwards could not recover for the loss of his prison job past the date of the disciplinary offense, which would have rendered him ineligible to maintain kitchen employment.  Because that evidence was relevant and admissible, this objection also is overruled.

### III.  CONCLUSION

For the foregoing reasons, the court will overrule Edwards's objections, uphold the magistrate's ruling denying Edwards's motion for spoliation sanctions, adopt the Amended R&R, and enter judgment in favor of DeBord.  An appropriate order will be entered.

Entered: December 8, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge